# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TITAN CNG, LLC, *et al.*,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 25-11525 (MFW)<br><br>(Joint Administration Requested) |

## DECLARATION OF MARK E. PALMER, CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Mark E. Palmer, declare the following under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of Titan CNG, LLC ("Titan CNG") and its affiliated debtors and debtors-in-possession: Titan Transportation Equipment Leasing, LLC f/k/a EVO Equipment Leasing, LLC ("Titan Leasing") and J.B. Lease Corporation ("J.B. Leasing" and collectively, the "Debtors"), and submit this declaration (the "Palmer Declaration") in support of the chapter 11 petitions and first-day motions filed by the Debtors.

2. Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my experience, knowledge, and familiarity with the Debtors' business and operations.

## BACKGROUND

3. I am the founder and managing director of Theseus Strategy Group LLC ("TSG")

---

[1] The Debtors and the last four digits of each Debtors' respective federal Employer Identification Number are: Titan CNG, LLC (6720); Titan Transportation Equipment Leasing, LLC (5850); and J.B. Lease Corporation (2869). The Debtors' service address is 20860 N Tatum Blvd. Suite 344, Phoenix, AZ 85050, Attn: Chief Restructuring Officer.

and have over 30 years of experience as a corporate/restructuring advisor and in special situations investing, novel transaction structures and complex liability/risk management.

4. I was appointed as the Debtors' CRO shortly prior to and in anticipation of the filing of the Debtors' voluntary chapter 11 petitions with this Court.

5. Since June 6, 2025, TSG was retained by EVO Transportation & Energy Services, Inc. ("EVO Transportation"), the Debtors' parent company, as outside financial and restructuring advisory consultant to implement a company-wide improvement initiative to preserve and enhance its value for the benefit of its stakeholders.

6. In this capacity, I assisted the Debtors with, among other things, liquidity management, operational issues, financial needs, communications and negotiations with creditors, evaluation of strategic alternatives including potential sale alternatives, and the preparation and filing of these cases.

7. It is my understanding that the Debtors will file an application to retain me as their CRO in these cases, subject to approval of the Court.

## THE CHAPTER 11 CASES

8. On August 14, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") commencing these cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

9. In sum, the Debtors filed the Chapter 11 Cases to restructure their equipment lease and financing obligations and effectuate an orderly, value-maximizing restructuring and winddown of the Debtors' businesses and operations, including through the sale of all or substantially all of the Debtors' obsolete equipment and the amendment, assumption and

230850335 v7

assignment of equipment financing agreements for the benefit of their creditors and other parties in interest. The Debtors hope to leverage the stay provided by chapter 11 during this period in order to permit an orderly sale and negotiation process.

10. To minimize the adverse effects on their business and facilitate the Chapter 11 Cases, the Debtors have filed motions seeking certain relief contemporaneously herewith (the "First Day Motions").

11. The First Day Motions are intended to enable the Debtors to operate effectively and efficiently within these Cases, as well as to avoid certain adverse consequences that might otherwise result from the commencement thereof.

## THE DEBTORS' HISTORY AND OPERATIONS

12. The Debtors are part of the EVO family of companies, that operate individually as truckload carriers, and collectively under EVO Transportation, the Debtors' parent company, as long-haul transportation and delivery service providers.

13. Debtors, Titan Leasing *f/k/a* EVO Equipment Leasing, LLC and J.B. Lease Corporation are parties to various lease and finance agreements for the vehicles and vehicle equipment in their fleets (including tractors, trailers, and trucks). Titan CNG was previously in the business of owning and operating compressed natural gas fueling stations and was acquired by EVO Transportation on November 22, 2016.[2] Titan CNG is no longer operating.

14. EVO Transportation and its affiliates provide transportation services to a variety of large customers, with a diversified fleet of tractors, straight trucks and other vehicles that operate on either diesel fuel, gasoline or compressed natural gas (CNG).

15. EVO Transportation operates from its main headquarters in Phoenix, Arizona and

---

[2] Known as Minn Shares Inc. at the time.

via its operating subsidiaries from numerous operating locations including in Texas, Maryland, New Jersey, Missouri and Wisconsin.

## THE DEBTORS' CORPORATE AND CAPITAL STRUCTURE

### A. Corporate Structure

16. Debtors, Titan CNG and Titan Leasing are both wholly owned subsidiaries of EVO Transportation. Debtor J.B. Leasing is a wholly owned subsidiary of Titan Leasing and is based in Oak Creek, Wisconsin. J.B. Leasing was acquired by EVO Transportation on February 1, 2019.

17. The Debtors' corporate structure is summarized below:



### B. Pre-Petition Capital Structure

### (i) The Term Loan

18. On September 16, 2019, EVO Transportation entered into a $24.5 million financing agreement (the "Term Loan Agreement") with Antara Capital Master Fund LP ("Antara Capital"),

CEOF Holdings LP ("CEOF Holdings" and collectively, the "Term Loan Lenders") and Cortland Capital Market Services LLC, as administrative agent and collateral agent.

19. Pursuant to the Term Loan Agreement, EVO Transportation initially borrowed $22.4 million and borrowed the remaining $2.1 million during October 2019 (the "Term Loan").

20. All of EVO Transportation's subsidiaries (including the Debtors, collectively, the "EVO Subsidiaries") are original guarantors under the Term Loan Agreement. The Term Loan is secured by all assets of EVO Transportation and the EVO Subsidiaries, including pledges of all equity of EVO Transportation in the EVO Subsidiaries (the "Term Loan Collateral").

21. Concurrently, and in connection with the Term Loan Agreement, EVO Transportation issued two warrants (the "Antara Warrants") to Antara Capital to purchase an aggregate of 4,375,000 shares of EVO Transportation's common stock (the "Antara Warrant Shares").

**(ii)     The Bridge Loan**

22. On March 11, 2022, EVO Transportation entered into a Senior Secured Loan and Executive Loan Agreement (the "Bridge Loan Agreement" and together with the Term Loan Agreement, the "Pre-Petition Loan Agreements") with Antara Capital, Thomas J. Abood, EVO Transportation's former chief executive officer, Damon R. Cuzick, EVO Transportation's former chief operating officer, Bridgewest Growth A Fund LLC, an entity affiliated with Billy (Trey) Peck Jr., EVO Transportation's executive vice president business development, and Batuta Capital Advisors LLC ("Batuta" and together with Mr. Abood, Mr. Cuzick and Bridgewest Growth Fund LLC, the "Executive Lenders").

23. Pursuant to the Bridge Loan Agreement, EVO Transportation obtained a bridge loan in the amount of $9 million (the "Bridge Loan" and together with the Term Loans, the "Pre-

5

Petition Secured Loans") from Antara Capital and also borrowed $800,000 from the Executive Lenders (the "Executive Loans" and together with the Term Loans and the Bridge Loan, the "Pre-Petition Loans").

24. The Bridge Loan is guaranteed by all the EVO Subsidiaries (including the Debtors) and secured by liens on all assets, including pledges of all equity in EVO Subsidiaries.

25. Pursuant to the terms of the Bridge Loan Agreement, the Executive Loans are subject to a springing contingent lien on all assets, subordinated in all respects to the Bridge Loan and contingent upon the repayment thereof.

26. On September 8, 2022, EVO Transportation and Antara Capital entered into a Securities Purchase Agreement (the "SPA") and consummated certain transactions involving the recapitalization of EVO Transportation (the "EVO Recapitalization Transactions") and the cancellation of certain indebtedness in exchange for equity of EVO Transportation. Among the EVO Recapitalization Transactions included an amendment to EVO Transportation's certificate of incorporation to effectuate the increase in the number of authorized shares of its common stock, par value $0.0001, from 100 million to 600 million (the "EVO Charter Amendment").

27. Under the SPA, Antara Capital agreed to pay EVO Transportation $13.5 million to purchase preferred stock and immediately exercisable warrants to purchase shares of common stock of EVO Transportation at an exercise price of $0.0001 per share.

28. As of the Petition Date, EVO Transportation and the Debtors have contingent liability with respect to EVO Transportation's funded indebtedness in the aggregate principal amount of approximately $46 million, consisting of approximately: (i) $45 million on account of Pre-Petition Secured Loans; and (ii) $1 million on account of unsecured Executive Loans.

29. In addition, as of the Petition Date, the Debtors have contingent liability of

approximately $37 million to lessors and other vehicle finance companies.

## THE DEBTORS' GOALS IN THESE CHAPTER 11 CASES

30.     The Debtors' primary assets include their interests in various trucks, trailers, and related transportation and vehicle equipment (the "Equipment") under various lease and finance agreements (the "Equipment Leases and Finance Agreements").

31.     The Debtors, in consultation with their advisors, have filed these Chapter 11 Cases to restructure the Equipment Leases and Finance Agreements and sell or dispose of obsolete equipment in an orderly fashion.

32.     In furtherance of these goals, the Debtors entered into that certain Shared Services and Funding Agreement (as may be amended, supplemented, or otherwise modified from time to time and including all exhibits thereto, the "Shared Services and Funding Agreement") with EVO Transportation and certain operating affiliates as identified in the Shared Services and Funding Agreement (collectively, the "Operating Non-Debtor Affiliates", and together with EVO Transportation, the "EVO Group").  Under the Shared Services and Funding Agreement, the EVO Group agreed to, *inter alia*:

(i)     continue providing, at their own expense, Services (as that term is defined in the Shared Services and Funding Agreement and on Schedule 1 thereto) to the Debtors during these Chapter 11 Cases that are consistent with their past practices, including, but not limited to, general administrative, management, logistical, maintenance, insurance, compliance, technology, and employee support services;

(ii)    continued provide funding for the Debtors to make reasonable third-party charges necessary to retain and provide the Equipment to the EVO Group in the form of adequate protection payments or lease or rental payments on Equipment during the Chapter 11 Cases;

(iii)   pay for the reasonable professional and administrative expense fees,

7

        including the US Trustee fees, incurred by the Debtors during the Chapter 11 Cases consistent with the Budget attached to the Share Services and Funding Agreement; and

(iv)    fund a current carve-out fund of $50,000 for professional fees and US Trustee fees, plus an additional $50,000 for professional, US Trustee and chapter 7 trustee fees in the event of a conversion or termination of the Shared Services and Funding Agreement.

## EVIDENCE IN SUPPORT OF FIRST DAY MOTIONS

### A.    The First Day Motions

33.    The Debtors are filing various First Day Motions seeking initial relief to smooth the entry into Chapter 11. As a result of my discussions with counsel and other professionals, I have formed opinions as to: (a) the necessity of obtaining the relief sought in the First Day Motions, (b) the importance of the relief sought in the First Day Motions for the Debtors to continue to operate effectively, and (c) the negative impact upon the Debtors of not obtaining the relief sought in the First Day Motions.

34.    The First Day Motions include:

(i)    Motion of the Debtors for an Order Directing Joint Administration of Related Chapter 11 Cases; and

(ii)    Motion of the Debtors for Interim and Final Orders: (i) Authorizing, But Not Directing, the Continued Use of the Debtors' Cash Management System, Bank Accounts, and Business Forms, (ii) Authorizing Intercompany Transactions, in accordance with the Shared Services and Funding Agreement, (iii) Approving the Shared Services and Funding Agreement, and (iv) Granting Related Relief (the "<u>Cash Management and Funding Motion</u>").

35.    I am familiar with the content and substance of the First Day Motions and believe

that the relief sought in each of the First Day Motions is necessary to enable the Debtors to operate in Chapter 11 with minimal disruption to their business operations and constitutes a critical element in successfully winding down the Debtors' businesses for the benefit of creditors and parties in interest.

36. Through the Cash Management and Funding Motion, the Debtors seek authority to, among other things, ensure the continuation of the Debtors' cash management systems, approve intercompany transactions, and fund the Debtors' Chapter 11 Cases and operations without interruption. The Debtors' continued performance under the Shared Services and Funding Agreement, which provides for the sharing of essential services between the Debtors and the EVO Group, enables the Debtors to fund Lease Payment Obligations and conduct an orderly winddown of their estates, thereby maximizing the value of the estates and recoveries for all creditors. Pursuant to the Shared Services and Funding Agreement, the EVO Group will continue to provide certain corporate and operational services, including shared insurance coverage, corporate services, and employees to the Debtors. Under the Agreement, and in accordance with prepetition practice and the ordinary course, the Debtors will provide the EVO Group with access to their Equipment.

37. The funding and Services provided by the EVO Group are essential to the Debtors' business, especially while they seek to wind down in an orderly fashion during these Chapter 11 Cases, which requires minimal disruption to their business to preserve the value of assets to be liquidated. Accordingly, approval of the Shared Services and Funding Agreement is reasonable and justified.

38. I believe that the relief requested in the First Day Motions is also necessary to allow the Debtors to successfully implement their goals and honor their contractual and fiduciary duties

during these Chapter 11 Cases.

39. For the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of these Cases, I respectfully request that each of the First Day Motions be granted, together with such other and further relief as this Court deems just and proper.

## **CONCLUSION**

40. The Debtors believe that these Chapter 11 Cases, and the strategy outlined above, represent the best and only way to provide a meaningful return to creditors, and maintain the Debtors' mission to serve their creditors, vendors and customers.

41. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 20, 2025

*Mark Palmer*
_____
Mark E. Palmer
Chief Restructuring Officer of the Debtors

230850335 v7